```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**BARBARA HENRY WEST**                              **CIVIL ACTION**

**VERSUS**                                          **NO: 07-5819**

**ABC INSURANCE COMPANY, ET AL**                    **SECTION: "B" (5)**

## ORDER AND REASONS

Before the Court are Defendants Art Sadin and Provost Umphrey Law Firm LLP's Motions for Summary Judgment, to Dismiss, and to Strike. (Rec. Docs. 25, 26, 45). The motions to dismiss and to strike are primarily requests for sanctions due to the alleged failure of Plaintiff to comply with this Court's orders, namely scheduling and discovery orders. The motion to strike specifically requests striking Plaintiff's opposition to the Motion for Summary Judgment as untimely and alternatively striking Exhibits A and D attached to one of Plaintiff's deficient opposition filings.[1] After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

---

[1] Defendants assert that the exhibits are not proper summary judgment evidence. Exhibit A is a signed and dated statement of Plaintiff that Defendants assert is not properly notarized. Exhibit D is an affidavit of Defendant Art Sadin and a settlement breakdown chart. The chart appears to be part of an internal office communication. (See Response of Art Sadin to Plaintiff's Bar Grievance, Rec. Doc. 25, Ex. 1-B at 12-13). Plaintiff asserts that Defendants never showed her this chart and prepared it only in response to a bar grievance Plaintiff filed against Defendant Sadin. Defendants have not alleged in the pleadings that this particular chart was shown to Plaintiff when the settlement offer was presented. Defendants object to Plaintiff's handwritten notes on the chart. (See Rec. Doc. 45-13 at 3).

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss and to Strike are **DISMISSED as moot**.

## BACKGROUND

Defendants represented Plaintiff in a personal injury lawsuit against Amtrak that went to trial in November 2002. During trial Defendant Art Sadin conveyed a $400,000.00 settlement offer by Amtrak to Plaintiff. Plaintiff rejected this offer upon the belief that the $400,000.00 was the gross offer and that she would be left with nothing after paying attorney's fees and medical costs. Defendant asserts that he explained to Plaintiff that the $400,000.00 was the net amount Plaintiff would receive. The case went to trial, and the jury rendered a verdict in favor of Defendants, awarded nothing to Plaintiff. The case was appealed and writ was denied by the Louisiana Supreme Court in November 2004.

It appears that sometime after their employment with Amtrak ceased, Sherry Carthane and Charles Flint, who were employed by Amtrak as a Rehabilitation Expert and Claims Representative respectively at the time of Plaintiff's trial, conferred and decided to contact Plaintiff and inform her of a settlement offer made by Amtrak immediately before or during the trial. On or about October 6, 2004, Carthane contacted Plaintiff by telephone and informed Plaintiff that Amtrak had made a settlement offer before trial and that she believed such offer was in the $700,000 range,

but she was not sure of the exact figures. Carthane also informed Plaintiff that she had discussed Plaintiff's case against Amtrak with Charles Flint, an Amtrak claims representative who conducted settlement negotiations on behalf of Amtrak, and further advised Plaintiff to contact attorney Bridgette Kazmarek. Plaintiff followed Ms. Carthane's advice and retained Bridgette Kazmarek, who subsequently arranged for Charles Flint to deliver a deposition style sworn statement at Ms. Kazmarek's office.

Charles Flint stated that he had contacted Plaintiff at this time because he had retired from Amtrak and thus no longer had any ties to the company. (See Rec. Doc. 47-8 at 15). In his sworn statement, Flint asserted that he made a $600,000 settlement offer to Defendant Art Sadin about a week prior to trial and that he and Defendant continued settlement negotiations during trial. *Id*. at 7-10, 12. In October 2004 Plaintiff initiated a bar grievance against Defendant Art Sadin, which was subsequently dismissed by the Texas Bar. In May 2005 Plaintiff filed the instant lawsuit in Louisiana state court. The case was removed to this Court following the August 24, 2007 state court's grant of a motion for summary judgment in favor of the non-diverse defendants. Plaintiff alleges that Defendant Art Sadin and his law firm failed to adequately explain the settlement offer to her and thus committed malpractice.

Defendants argue first that Plaintiff's claims are preempted

3

by La. Rev. Stat. § 9:5605, which provides that malpractice claims be brought within one year of the alleged act of malpractice or within one year that the act was or should have been discovered. Defendants argue that, at the latest, Plaintiff should have been aware of a malpractice cause of action at the time the defense verdict was rendered in November 2002. In support Defendants present an excerpt from Plaintiff's bar grievance in which Plaintiff states that on November 20, 2002, "I knew my attorney was doing something wrong to me. I wanted to come forward before, but I just couldn't get my thoughts together about my case." (Rec. Doc. 25, Ex. A-1 at 5).

Next Defendants argue that Plaintiff cannot prove that Defendants breached their standard of care. Defendants' main argument focuses on Plaintiff's lack of expert evidence establishing the applicable standard of care or stating that Defendant Sadin's communication of the settlement offer breached or failed to meet that standard of care and Defendants' presentment of expert evidence that Defendants did not breach their standard of care. Defendants also offer the affidavits of Defendant Sadin and paralegal Robin Garcia, who was present when Defendant Sadin relayed the settlement offer to Plaintiff. The affidavits attest that Defendant Sadin informed Plaintiff that $400,000 was the net recovery amount and that it was Defendant Sadin's normal practice to explain the breakdown of settlement offers to clients.

Plaintiff argues that the malpractice claim is not preempted because Plaintiff did not discover the alleged act of malpractice until her October 2004 conversation with Ms. Carthane. Plaintiff's opposition does not directly address the proper standard of care and only presents various allegations within her argument against preemption including allegations that Defendant Sadin never informed Plaintiff of a $600,000 - $700,000 settlement offer and that Sadin created a "phantom" chart during the bar grievance examination showing the gross and net settlement breakdown. Plaintiff asserts that such chart was not shown to her when Sadin originally explained the $400,000 settlement offer. Plaintiff also asserts that she understood that $400,000 was all Defendant Sadin could get for her and that after she paid him, she would "have nothing." (Rec. Doc. 38 at 4).

## DISCUSSION

**A.   Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

5

(1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Preemption**

La. Rev. Stat. § 9:5605 provides that a legal malpractice claim prescribes within one year from the date of the negligent act or one year from the date the alleged negligent act was discovered or should have been discovered. The statute further provides that "even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission or neglect." *Id*. The Louisiana Supreme Court in *Reeder v. North,* 97-0239 (La.10/21/97) 701 So.2d 1291, 1296, ruled that this statutory language should be strictly construed and held:

> While the terms of the legal malpractice statute may seem unfair in that a person's claim may be extinguished before he realized the full extent of his damages, the enactment of such a statute of limitations is exclusively

a legislative prerogative.

The one-year period set forth in La. Rev. Stat. § 9:5606 is a peremptive period, as opposed to a prescriptive period. *Dauterive Contractors, Inc. v. Landry and Watkins,* 811 So.2d 1242, 2001-1112 (La.App. 3 Cir. 3/13/02); *see also Serou v. DeLaup*, 2006 WL 3759555, at *2 (E.D. La. 2006), *aff'd*, 244 Fed. Appx. 588 (5th Cir. 2007). Accordingly, termination of the one-year period extinguishes or destroys the right. *Dauterive,* 811 So.2d at 1251 (citing La. Civ. Code art. 3458). Public policy requires that the rights to which peremptive periods attach are to be extinguished after passage of a specified period. *Id.* As such, nothing may interfere with the running of a peremptive period. *Id.* It may not be interrupted or suspended, nor is there a period for its renunciation. *Id.*

The peremptive period begins to run upon the plaintiff's knowledge of the facts upon which her claim is based. *Serou*, 2006 WL 3759555 at *2 (*citing Ledbetter v. Wheeler,* 31, 357 (La.App. 2 Cir. 12/9/98) 722 So.2d 382, 385)). The standard imposed is that of a reasonable man. *Id*. (*citing Carroll v. Wolfe,* 98, 1910 (La.App. 1 Cir. 9/24/99) 754 So.2d 1038, 1041). Any plaintiff who had knowledge of facts that would place a reasonable man <u>on notice that malpractice may have been committed</u> shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he asserts a limited ability to comprehend

7

and evaluate the facts. *Carroll,* 754 So.2d at 1048 (*citing Taussig v. Leithead,* 689 So.2d 680 (La.App. 3 Cir. 2/19/97)).

The focus is on the appropriateness of the claimant's actions or inactions. *Id.* Evaluated actions include statements of the plaintiff indicating dissatisfaction with or suspicions about the attorney's actions and whether and when the plaintiff investigated her suspicions and accusations. *See Serou*, 2006 WL 3759555 at *3; *Turnbull v. Thensted*, 1999-0025 (La. App. 4 Cir. 3/1/00); 757 So.2d 145, 151 (finding that plaintiff had "inexcusably allowed 15 months to elapse before she filed her ... malpractice suit ... after verbally expressing her disapproval of [her attorney's] work product"). For example in *Serou v. DeLaup*, the court evaluated emails evidencing that, during the period of representation, the plaintiff "was concerned [her attorney] was not acting in her best interest and that she did not trust him to represent her." *Serou* involved a plaintiff's claim that her divorce attorney had committed malpractice by failing to inform her of a possible tort claim against her abusive husband. The plaintiff did not learn about the availability of the tort claim until she procured new counsel, at which point the statute of limitations barred the tort claim. *Id*. The court found that the plaintiff was aware of the facts forming the basis of her malpractice claim during defendant's representation of her and also noted plaintiff's failure to investigate her accusations that her attorney was negligent. *Id*.

8

An adverse ruling has also been evaluated by courts as a fact putting a reasonable man on notice that malpractice may have been committed. In *Turnbull* the court found that the limitation period started running and plaintiff could have commenced her malpractice action any time after the issuance of adverse summary judgment rulings. 757 So.2d at 151. Similarly, in *Perez v. Trahant*, 2000-2372 (La. App. 1 Cir. 12/28/01); 806 So.2d 110, 117-18, a case in which the plaintiff accused his attorney of malpractice when the attorney failed to recommend settlement[2] and the jury returned a verdict which awarded no damages, the court found that knowledge of the malpractice existed on the date of the jury's verdict rather than the date all appeals were exhausted.[3]

Plaintiff contends that she did not discover the alleged act

---

[2]Note that *Perez* is distinct from the present case in that the settlement offer was made during a mediation which the plaintiff attended with his attorney.

[3]The court's holding was based in part on the finding that plaintiff had knowledge of the possibility of losing on appeal. *Id.* at 118. Judge Ciaccio dissented on the basis that there was no evidence to support an inference that the plaintiff knew or should have known of any act of malpractice at the time of the jury verdict. *Id.* at 120-21. Judge Ciaccio noted that both the plaintiff and his attorney expended money and time on the appeal and would not have done so had they believed the appeal was without merit. *Id.* Hence, Judge Ciaccio found that the plaintiff could not have discovered the malpractice until the supreme court denied writs. *Id.* at 121. Judge Gonzales concurred with the majority opinion and commented on his dissatisfaction with the limitations statute:
> Under this legal scheme, a client is required to file suit against his own attorney at a time when that lawyer is still representing him. In these issues of claimed malpractice involving settlements, seldom is the client in the position to know when and if malpractice has occurred. This law really requires a client to be his own malpractice attorney in order to make the decision to retain an additional attorney while his case is on appeal. The legislature has said for all practical purposes it is not going to allow legal malpractice claims where the malpractice involves a settlement.

*Id.*

of malpractice until she was contacted in October 2004 by former Amtrak employees Sherry Carthane and Charles Flint, who informed her of the $600,000-$700,000 settlement offer Amtrak made during her trial. However, in her State Bar of Texas Grievance Form, Plaintiff indicates dissatisfaction with her attorney as early as November 20, 2002. In the Grievance Form, Plaintiff provides diary type descriptions of actions in her case; for November 20, 2002 she writes:

> My life has been a living hell [sic] I knew my attorney was doing something wrong to me [sic] I wanted to come forward before, but I just couldn't get my thoughts together about my case. I have been in such a depress [sic] stage about my case I dare not really talk about it before now.

(Rec. Doc. 25, Ex. 1-A at 6). Plaintiff also indicates in the Grievance Form that on November 18, 2002, her attorney told her he could "get [her] close to $400,000.00." *Id*. at 4. (See also Rec. Doc. 38 at 4)(stating that Defendant Sadin "cornered" Plaintiff in a hotel room in the middle of her trial and stated he could get her close to $400,000). The jury's verdict was delivered in November 2002 and the writ of certiorari was denied by the Louisiana Supreme Court in November 2004.

The facts of this case are analogous to the situation in *Serou*. Like the *Serou* plaintiff, Plaintiff West indicates that, although she did not know the specific act of alleged wrongdoing until her conversations with Carthane and Flint, she was dissatisfied with her attorney during his representation of her yet

10

failed to investigate the matter for years. Additionally, the adverse jury verdict may have also served to put Plaintiff on notice of potential malpractice. Therefore the Court finds that Plaintiff was on notice that malpractice may have been committed as early as November 20, 2002 and at the latest by December 11, 2002 when the trial judge issued the Judgment on the Merits, dismissing the case with prejudice. Hence, Plaintiff's malpractice claims are perempted under La. Rev. Stat. § 9:5605. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss and to Strike are **DISMISSED as moot**. Defendants were not prejudiced by Plaintiff's untimely opposition. Additionally, the exhibits to which Defendants objected were part of a deficient filing that was therefore not properly before the Court for consideration. (See Rec. Doc. 42). Furthermore, the Court finds that consideration of the objected to exhibits would not have prejudiced Defendants as the information in Plaintiff's statement (Ex. A) was presented in Plaintiff's opposition memorandum and the statement of Charles Flint and Defendants' pleadings do not allege having shown Plaintiff a settlement breakdown chart.

New Orleans, Louisiana, this 24th day of March, 2009.

_____
**IVAN L.R. LEMELLE**
**UNITED STATES DISTRICT JUDGE**